# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAWN VAGNINI,

      Plaintiff,

v.

PRECISION VEHICLE LOGISTICS, LLC

      Defendant.

Case No.
Hon.

---

Noah S. Hurwitz (P74063)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Now Comes Plaintiff Dawn Vagnini, by and through her attorneys, NachtLaw, P.C., and brings this action against Defendant Precision Vehicle Logistics, LLC and hereby alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action alleging sex discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e and Michigan's Elliot-

1

Larsen Civil Rights Act ("ELCRA") seeking equitable, declaratory, and injunctive relief and money damages against Defendant, as set forth herein.

2. Plaintiff Dawn Vagnini ("Plaintiff") is a resident of Manchester, Washtenaw County, Michigan within the Eastern District of Michigan.

3. Defendant Precision Vehicle Logistics, LLC ("Defendant") is a limited liability company with its resident agent located in Plymouth, Wayne County, Michigan, and doing business within this judicial district.

4. Defendant is an employer and Plaintiff was an employee within the meaning of Title VII and ELCRA.

5. This Court has jurisdiction pursuant to 42 U.S.C. §2000e (Title VII of the Civil Rights Act); 28 U.S.C. §1331 (federal question jurisdiction); and 28 U.S.C. §1343(a)(4) (jurisdiction over civil rights claims).

6. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. §1367, as they arise from the same case and controversy.

7. Venue in this Court is proper pursuant to 28 U.S.C. §1391, as a substantial part of the events and omissions giving rise to this Complaint occurred in Plymouth, Wayne County, Michigan, located within this judicial district.

8. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her sex (female) and retaliation.

9. Plaintiff's charge was filed within 300 days of the unlawful employment practices alleged in this claim.

10. Plaintiff received notice of her right to sue on February 2, 2021, and she has filed this complaint within 90 days of her receipt of her notice of rights.

## STATEMENT OF FACTS

11. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

12. Plaintiff, a woman, began her employment with Defendant Precision in April 2019 as a Supervisor for Yard Operations at the Ford Michigan Assembly Plant ("MAP").

13. Plaintiff's position as Supervisor required daily interaction with Defendant Ford's employees who were also at MAP.

14. Plaintiff worked with Ed Kidd, an employee of Defendant Ford, who consistently made sexual advances to her on the phone and in-person.

15. Plaintiff endured overtly sexual requests from Mr. Kidd, including but not limited to, him begging her to have sex with him.

16. In February 2020, Plaintiff was in the office when Mr. Kidd inappropriately hugged her without consent in front of Plaintiff's manager, Antwone Rivers.

17. Plaintiff resisted Mr. Kidd and asserted that he not to touch her.

18. Immediately thereafter, Plaintiff reported to Mr. Rivers that Mr. Kidd had been making sexual advances to her on the phone and in-person, stating that it made her feel "uncomfortable," and Mr. Rivers assured Plaintiff he would raise the issue with Mr. Kidd.

19. In or about February 2020, a week after the incident, Plaintiff asked Mr. Rivers if he addressed the complaint with Mr. Kidd and was told that he had forgotten to do so.

20. On March 23, 2020, Mr. Kidd called Plaintiff's cell phone four times to proposition her for sexual relations. Plaintiff's phone records reflect calls from Mr. Kidd at 6:01 a.m., 6:06 a.m., 6:21 a.m., and 8:58 a.m.

21. In May 2020, upon returning to in-person work from the ongoing COVID-19 pandemic, Mr. Kidd again made unwanted sexual advances towards Plaintiff, including but not limited to, pleading "please let's get this over with and do it."

22. Plaintiff insisted that she was not interested and told Mr. Kidd that she was "married and this will never happen."

23. On July 26, 2020, Mr. Kidd called Plaintiff's cell phone six times to proposition her for sexual relations. Plaintiff's phone records reflect calls from Mr. Kidd at 5:02 a.m., 5:33 a.m., 5:36 a.m., 6:35 a.m., 6:49 a.m., and 12:49 p.m.

24. On July 31, 2020, Mr. Kidd called Plaintiff's cell phone to proposition her for sexual relations. Plaintiff's phone records reflect a call from Mr. Kidd at 5:45 a.m.

25. On August 1, 2020, Mr. Kidd called Plaintiff's cell phone four times to proposition her for sexual relations. Plaintiff's phone records reflect calls from Mr. Kidd at 4:57 a.m., 11:57 a.m., 1:00 p.m., and 4:43 p.m.

26. On August 13, 2020, Mr. Kidd sent a text message to Plaintiff at 10:44 a.m. stating: "Would you be my girlfriend circle yes or no."

27. On September 9, 2020, Plaintiff once again informed Mr. Rivers, along with two other managers present, Todd Vaughn and Anthony Tsoukalas, that Mr. Kidd's sexual requests and advancements had not stopped and that she felt unsafe at work.

28. Plaintiff was informed by the three managers that the complaint could not be investigated without "proof" of Mr. Kidd's behavior.

29. Mr. Rivers also indicated to Plaintiff that he could not escalate the complaint to human resources because Defendant's General Manager, Matt Alber, was "buddies" with Mr. Kidd.

30. Defendant ignored Plaintiff's multiple complaints instead of escalating the issue to Mr. Kidd's employer, Ford Motor Company—thus prioritizing customer relations over employee safety.

5

31. Plaintiff worked in constant fear for her safety in a space with Mr. Kidd where she was alone and could not avoid being around him. She locked the doors to her office after other employees left out of fear that she would be sexually assaulted, as Mr. Kidd insisted that she would soon "give in."

32. Plaintiff stopped fixing her hair and wearing makeup to work in hopes of preventing Mr. Kidd's sexual advances.

33. Despite the additional challenges posed by Mr. Kidd's unwanted and inappropriate actions, Plaintiff performed her duties and responsibilities diligently and to a high degree of satisfaction.

34. On September 14, 2020, Plaintiff was constructively discharged from the position and resigned.

35. On September 15, 2020, Plaintiff was informed during her exit interview that Mr. Rivers escalated the sexual harassment complaint against Mr. Kidd on September 10, 2020.  Yet, no one had previously informed Plaintiff that the matter was being investigated.

36. On September 16, 2020, Plaintiff was asked to rescind her resignation and return to work, albeit at a different location at Defendant DriveAway Operation in Flat Rock, Michigan, which is 22 miles away from Wayne County.

37. On September 17, 2020, over seven months after her original complaint was disregarded, human resources finally asked Plaintiff to be interviewed.

38. However, neither Defendant nor Ford Motor Company investigated the propriety of Mr. Kidd's behavior, and punished Plaintiff by transferring her to a new location.

39. On October 30, 2020, Defendant made an offer of reinstatement.

40. Plaintiff reasonably declined the offer of reinstatement because she had doubts that work environment had changed and that she would not have felt comfortable working at her employer.

41. Pursuant to *Wilcox v. Stratton Lumber, Inc.*, 921 F. Supp. 837, 75 Fair Empl. Prac. Cas. (BNA) 555, 135 A.L.R. Fed. 653 (D. Me. 1996), Defendant's belated offer of reinstatement only after failing to investigate the matter and accusing Plaintiff of fabricating her allegations is not a true offer of reinstatement that would mitigate Plaintiff's damages in any respect.

### COUNT I
### SEX DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

42. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

43. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

44. Plaintiff is a member of a protected class based on her sex (female)

45. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

46. Plaintiff was constructively discharged after Defendant failed to investigate the conditions making it intolerable for her to work.

47. Defendant subjected Plaintiff to adverse employment actions, including constructive discharge and offering to transfer Plaintiff to a new location, due to her sex, in order to separate her from Mr. Kidd, who suffered no punishment for his behavior.

48. But for Plaintiff's sex, Defendant would not have subjected Plaintiff to such adverse employment actions.

49. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

50. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

51. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## COUNT II
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

52. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

53. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

54. Plaintiff is a member of a protected class based on her sex (female).

55. During Plaintiff's employment, Plaintiff was subjected to severe and pervasive unwelcome sexual conduct and communication by an employee of Ford Motor Company who worked in close proximity to Plaintiff.

56. The severe and pervasive unwelcome sexual conduct and communication was intended to and did substantially interfere with Plaintiff's employment.

57. This unwelcome conduct created a hostile work environment based on Plaintiff's sex.

58. This conduct was objectively and subjectively offensive such that a reasonable person would find it hostile or abusive.

59. Plaintiff found this conduct both objectively and subjectively offensive.

60. Defendant had both actual and constructive notice that its employee had created a sexually and/or sex-based hostile and offensive work environment for Plaintiff.

61. Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant.

62. Defendant failed to take effective remedial action to stop the harassment.

63. Plaintiff was constructively discharged after Defendant failed to investigate the conditions making it intolerable for her to work.

64. Defendant's actions were taken with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

65. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

66. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

**COUNT III**

## RETALIATION IN VIOLATION OF
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e</u>

67. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

68. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

69. Plaintiff engaged in protected activity by complaining about Defendant's hostile and discriminatory work environment.

70. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

71. Defendant subjected Plaintiff to adverse employment actions including but not limited to causing the circumstances of her constructive discharge and then later only offering her reinstatement to a less desirable position after accusing her of being a liar.

72. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

73. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

74. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and

impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

75. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## COUNT IV
## SEX DISCRIMINATION IN VIOLATION OF
## ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2201 et seq.

76. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

77. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL § 37.2201.

78. Plaintiff is a member of a protected class based on her sex (female).

79. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

80. Defendant subjected Plaintiff to adverse employment actions, including but not limited to suspension and moving her to a less desirable position, due to her sex.

81. But for Plaintiff's sex, Defendant would not have subjected her to such adverse actions, including constructive discharge.

82. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

83. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## COUNT V
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701 et seq.

84. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

85. At all relevant times, Defendant was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2202 *et seq.*

86. Plaintiff is a member of a protected class based on her sex (female).

87. During Plaintiff's employment, an employee of Ford Motor Company who worked on premises with Plaintiff subjected Plaintiff to severe and pervasive unwelcome sexual conduct and communication that was intended to and did substantially interfere with Plaintiff's employment.

88. This unwelcome conduct created a hostile work environment based on Plaintiff's sex.

89. This conduct was objectively and subjectively offensive such that a reasonable person would find it hostile or offensive.

90. Plaintiff found this conduct both objectively and subjectively offensive.

91. Defendant had both actual and constructive notice that an employee of Ford Motor Company had created a sexually and/or sex-based hostile and offensive work environment for Plaintiff.

92. Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant.

93. Defendant failed to take effective remedial action to stop the harassment.

94. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the

future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

95. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## COUNT VI
## RETALIATION IN VIOLATION OF
## ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701 et seq.

96. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

97. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2202 *et seq*.

98. Plaintiff engaged in protected activity by complaining about Defendant's hostile and discriminatory work environment.

99. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

100. Defendant subjected Plaintiff to adverse employment actions, including but not limited to intolerable conditions cause her constructive discharge and then only offering her reinstatement after accusing her of being a liar and moving her to a less desirable position.

101. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse actions.

102. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

103. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

**RELIEF REQUESTED**

For the foregoing reasons, Plaintiff Dawn Vagnini prays that this Honorable Court (a) declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act; (b) award Plaintiff all lost wages, past and future, to which she is entitled; (c) award Plaintiff compensatory damages; (d) award Plaintiff punitive and exemplary damages; (e) award Plaintiff reasonable attorney's fees, costs, and interest; and (f) award such other relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant and grant all relief requested in this Complaint.

Respectfully submitted,

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

Dated: March 18, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN VAGNINI,

       Plaintiff,                          Case No.
                                             Hon.

v.

PRECISION VEHICLE LOGISTICS LLC,

       Defendant.

---

Noah S. Hurwitz (P74063)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

---

## **JURY DEMAND**

      Plaintiff, Dawn Vagnini, by and through her attorneys, NACHTLAW, P.C., hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                      Respectfully submitted,

                                      /s/ *Noah S. Hurwitz*
                                      Noah S. Hurwitz (P74063)
                                      NACHTLAW, P.C.
                                      Attorneys for Plaintiff
                                      101 N. Main St., Ste. 555
                                      Ann Arbor, MI 48104

                                                                (734) 663-7550  
                                                                nhurwitz@nachtlaw.com

Dated: March 18, 2021